**O**

# United States District Court
# Central District of California

| | |
|---|---|
| MYMEDICALRECORDS INC., | Case № 2:13-cv-02538-ODW(SHx) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART** |
| QUEST DIAGNOSTICS INC., | **PLAINTIFF'S MOTION FOR** |
| Defendant. | **LEAVE TO AMEND** |
| | **INFRINGEMENT CONTENTIONS** |
| | **[52]** |

## I.   INTRODUCTION

Plaintiff MyMedicalRecords Inc. served Defendant Quest Diagnostics Inc. with its original infringement contentions in December 2013, alleging only literal infringement by two Quest products.  In April 2014, Quest released a new related product.  MMR promptly sent amended infringement contentions to Quest.  But MMR also included infringement under the doctrine of equivalents against all Quest products—not just the new one.

MMR moved for leave to amend its infringement contentions.  Quest opposed the Motion only with respect to adding doctrine-of-equivalents allegations against any Quest product.  The Court finds that the release of the new Quest product satisfies the good-cause element of Patent Local Rule 3-6 and justifies adding both literal and

doctrine-of-equivalents infringement allegations with respect to the new product.  The Court thus **GRANTS IN PART** the Motion on that ground.  But the Court **DENIES IN PART** the Motion with respect to adding a doctrine-of-equivalents allegation against the existing Quest products.[1]  (ECF No. 52.)

## II.   FACTUAL BACKGROUND

MMR produces various electronic healthcare solutions, including its MyMedicalRecords personal health records solution.  (FAC ¶¶ 6, 7.)  The product allows patients to collect, store, and maintain their personal health records in one location and access them at any time from any location.  (*Id.* ¶ 7.)  MMR is also the owner of United States Patents 8,301,466 and 8,498,883.  (FAC ¶¶ 19, 27.)

MMR originally filed suit against Quest on April 10, 2013, alleging infringement of the '466 Patent only.  (ECF No. 1.)  MMR alleged that Quest infringed the '466 Patent via its Gazelle mobile health application.  (*Id.* ¶ 12.)  Gazelle enables patients to receive and store personal medical records via the patient's cellular phone.  (*Id.*)  Patients set up a Quest Diagnostic Patient Account with a username and password allowing them to share their healthcare information with anyone they choose.  (*Id.* ¶ 13.)  Quest also produces another product that MMR alleged infringed the '466 Patent: Care360.  Care360 is an electronic healthcare solution for healthcare institutions and physicians.  (*Id.* ¶ 16.)  Care360 and Gazelle work together to allow healthcare providers to disburse electronic healthcare information to patients.  (*Id.*)

On October 30, 2013, MMR filed its First Amended Complaint against Quest. (ECF No. 23.)  While reiterating its original infringement allegations with respect to the '466 Patent, MMR also alleges that Quest infringes the '883 Patent via its Gazelle and Quest Diagnostic Patient Account products.  (*Id.* ¶ 28.)

On December 16, 2013, MMR served its Disclosure of Asserted Claims and Infringement Contentions for the '466 and '883 Patents on Quest.  (Hatch Decl. ¶ 3.)

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

1    MMR only alleged that Quest literally infringed the patents; it did not include an

2    infringement contention based on the doctrine of equivalents.

3      In April 2014, Quest released a new patient-side product called MyQuest by

4    Care360.  (*Id.* Ex. 3, at Ex. B at 1.)  MyQuest incorporates many features already

5    incorporated in Gazelle but also includes a new Internet portal in addition to the

6    mobile application.  (*Id.*)

7      On May 9, 2014, MMR provided Quest with its First Amended Disclosure of

8    Asserted Claims and Infringement Contentions.  (*Id.* Exs. 3, 4.)  In its infringement

9    contentions with respect to claim 1 of the '883 Patent, MMR alleges,

10      Quest also infringes this element under the doctrine of equivalents.  For

11      example, the Integrated Quest Applications perform substantially the

12      same function (e.g. receiving a request to schedule one or more

13      prescription refills concerning the drug prescription) in substantially the

14      same way (e.g. by receiving a request at a server) to obtain the same

15      result (e.g. the result of scheduling a drug prescription).  The differences,

16      if any, between the Integrated Quest Applications and the claimed

17      invention are insubstantial.

18   (*Id.* Ex. 4, at Ex. B, at 16.)  MMR defines "Integrated Quest Applications" as

19   including Quest's Gazelle, MyQuest, and Care360 products.  (*Id.* Ex. 3, at Ex. B,

20   at 1.)

21     MMR asked Quest to agree to the amendment.  But the parties were unable to

22   come to a resolution.  On June 27, 2014, MMR filed this Motion for Lave to Amend

23   Infringement Contentions.  (ECF No. 52.)  Quest timely opposed.  That Motion is now

24   before the Court for decision.

25         **III.   LEGAL STANDARD**

26     The Patent Local Rules reflect a more conservative approach to amendment

27   than the liberal policy for amending pleadings under the Federal Rules of Civil

28   Procedure.  Patent Local Rule 3-6 permits amendment of invalidity contentions "only

1  by order of the Court upon a timely showing of good cause."  Patent L.R. 3-6; *but cf.*

2  Fed. R. Civ. P. 15(a)(2) (permitting leave to amend "when justice so requires").

3        To make a satisfactory showing of good cause, a party seeking to amend its

4  invalidity contentions must show that it "acted with diligence in promptly moving to

5  amend when new evidence is revealed."  *See O2 Micro Int'l, Ltd. v. Monolithic Power*

6  *Sys.*, 467 F.3d 1355, 1363 (Fed. Cir. 2006) (affirming the district court's denial of

7  leave to amend infringement contentions where the party seeking to amend had the

8  necessary discovery almost three months before moving for leave to amend).  Even if

9  the moving party establishes its diligence, the Court then considers the potential

10  prejudice to the nonmoving party in determining whether to grant leave to amend.  *Id.*

11  at 1368.

12        Patent Local Rule 3-6 includes a non-exhaustive list of scenarios that could

13  support a finding of good cause:

14        (a) A claim construction by the Court different from that proposed by the

15            party seeking amendment;

16        (b) Recent discovery of material, prior art despite earlier diligent search;

17            and

18        (c) Recent discovery of nonpublic information about the Accused

19            Instrumentality which was not discovered, despite diligent efforts,

20            before the service of the Infringement Contentions.

## IV.   DISCUSSION

22        MMR moves to amend its infringement contentions to include reference to

23  Quest's new MyQuest product.   MMR contends that it timely amended its

24  infringement contentions after discovering the MyQuest product and therefore has

25  satisfied the "[r]ecent discovery of nonpublic information about the Accused

26  Instrumentality" prong of Patent Local Rule 3-6.  MMR further asserts that in the

27  course of investigating infringement by the MyQuest product, MMR determined that

28  it was appropriate to include the doctrine-of-equivalents allegation for one element of

claim 1 of the '883 Patent.  MMR argues that it could not have asserted this allegation originally, because it was not aware of the MyQuest product in December 2013 when it served its original infringement allegations.

Quest does not oppose amending the infringement contentions to include MyQuest but does oppose MMR's attempt to include a doctrine-of-equivalents infringement theory as to all products.  Quest argues that MMR has failed to establish the requisite good cause for adding the doctrine-of-equivalents allegations simply based on discovering the new MyQuest product since MMR was already aware of Gazelle and Care360.  Quest contends that the amendment is not tied to the discovery of any new evidence as to the two already existing products.  Quest also opposes adding the doctrine of equivalents with respect to MyQuest.

Distilling these arguments, the parties' dispute focuses solely on whether the Court should allow MMR to amend its infringement contentions to include doctrine-of-equivalents theories with respect to all Quest products: Gazelle, MyQuest, and Care360—the "Integrated Quest Applications."  MMR does not explain why it could have not alleged infringement via the doctrine of equivalents with respect to Gazelle and Care360 since MMR was well aware of these products in December 2013.  Its original infringement contentions contain no mention of the doctrine of equivalents.  MMR only attempts to bring the new theory now via its use of the term "Integrated Quest Applications," which includes Gazelle and Care360.  Since MMR has failed to demonstrate that it recently discovered any new, nonpublic information about Gazelle and Care360 that would lead to infringement under the doctrine of equivalents, the Court **DENIES IN PART** MMR's Motion to amend on this ground.

But while Quest also opposes MMR's addition of a doctrine-of-equivalents allegation with respect to MyQuest, the Court sees no reason why it should unnecessarily circumscribe MMR's infringement allegations relating to this new product.  Quest does not dispute—and the Court agrees—that Quest's release of MyQuest in April 2014 constituted "[r]ecent discovery of nonpublic information"

sufficient to establish good cause under Patent Local Rule 3-6(c). MMR should be permitted to allege infringement with respect to MyQuest on any ground for which it has a good-faith belief—whether literal infringement or infringement under the doctrine of equivalents. The Court accordingly **GRANTS IN PART** MMR's Motion with respect to the MyQuest product.

## V. CONCLUSION

In sum, the Court **GRANTS IN PART** MMR's Motion for Leave to Amend Infringement Contentions with respect to all infringement theories relating to MyQuest. (ECF No. 52.) But the Court **DENIES IN PART** the Motion with respect to adding doctrine-of-equivalents allegations against Gazelle and Care360.

**IT IS SO ORDERED.**

July 29, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**