O

# United States District Court
# Central District of California

| | |
|---|---|
| MYMEDICALRECORDS, INC., <br><br> Plaintiff, <br><br> v. <br><br> WALGREEN CO., <br><br> Defendant. | Case 2:13-cv-00631-ODW (SHx) <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OF INVALIDITY OF U.S. PATENT NO. 8,301,466 [90]** |
| MYMEDICALRECORDS, INC., <br><br> Plaintiff, <br><br> v. <br><br> QUEST DIAGNOSTICS, INC., <br><br> Defendant. | Case 2:13-cv-02538-ODW (SHx)* |
| MY MEDICALRECORDS, INC., <br><br> Plaintiff, | Case No. 2:13-cv-07285-ODW (SHx) |

| | |
|---|---|
| v.<br>WEBMD HEALTH CORP; WEBMD HEALTH SERVICES GROUP INC.,<br>Defendants.<br><br>MYMEDICALRECORDS, INC.,<br>Plaintiff,<br>v.<br>JARDOGS, LLC; ALLSCRIPTS HEALTHCARE SOLUTIONS, INC.,<br>Defendants. | Case No. 2:13-cv-03560-ODW(SHx) |

## I. INTRODUCTION

Defendants Quest Diagnostics Incorporated, Allscripts Healthcare Solutions, Inc., Empty Jar, LLC f/k/a/ Jardogs, LLC, WebMD Health Corp., and WebMD Health Services Group, Inc. (collectively, "Defendants") move for Judgment on the Pleadings of Invalidity of U.S. Patent No. 8,301,466 (the "'466 Patent") in these coordinated cases.[1] (ECF No. 90.) Defendants argue that the '466 Patent claims an abstract idea and therefore is invalid under 35 U.S.C. § 101. For the reasons discussed below, the Court finds that claims 8-12 of the '466 Patent are invalid under 35 U.S.C. § 101 as being directed towards patent-ineligible subject matter and **GRANTS** the Defendants Motion.[2]

---

[1] Facing several actions involving the same MMR patents, the Court consolidated the cases for invalidity purposes on November 18, 2014. (ECF No. 92.) The low number case, *MyMedicalRecords, Inc. v. Walgreen Co.*, No. 13-cv-00631-ODW(SHx), was designated as the lead case. The lead case has since settled, but the case remains open for the purposes of filing documents related to invalidity, which pertain to all of the MMR patent cases. Citations to the docket refer to the docket in the lead case unless indicated otherwise.

[2] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

2

## II. FACTUAL BACKGROUND

Plaintiff, MyMedicalRecords ("MMR"), has alleged that Defendants infringe claims 8-12 of the '466 Patent. The '466 Patent claims a method of collecting, accessing, and managing personal health records in a secure and private manner. Specifically, the '466 Patent discloses a method for providing users with a way to collect, access, and privately manage their medical records using conventional computer components and the Internet. ('466 Patent, at Abstract.) The '466 Patent specification describes several purported shortcomings in the prior art: (1) the need to provide secure and private communications between healthcare providers and patients in a manner convenient for both parties; and (2) the need for an individual to access their healthcare records and store and maintain those records in one secured, password-protected account of organized files. ('466 Patent at 5:1-10.)

To address these alleged problems, claims 8-12 of the '466 Patent recite a method for providing a user with the ability to collect, access, and manage personal health records in a secure and private manner. These claims further recite the use of computer functionality to implement the claimed method, including components such as "server," "storage medium," "user interface," "computing device," and "image file format files." MMR does not claim to have invented these computer components. Instead, the alleged invention of the '466 Patent relates to the idea of providing access to and storage and maintenance of healthcare records in secured, organized files. ('466 Patent at 5:1-10.)

On August 19, 2014, the Court held a consolidated claim-construction hearing and on September 3, 2014, the Court issued a Claim Construction Order. (ECF No. 67.) Corresponding to the Post-*Markman* Scheduling Order (ECF No. 88), Defendants filed their Motion for Judgment on the Pleadings on November 17, 2014. (ECF No. 90.) Plaintiff timely opposed and Defendants timely replied. (ECF Nos. 96, 99.) That Motion is now before the Court for decision.

/ / /

## III. LEGAL STANDARD

**A. Rule 12(c)**

A motion for judgment on the pleadings brought pursuant to Fed. R. Civ. P. 12(c) provides a means of disposing of cases when all material allegations of fact are admitted in the pleadings and only questions of law remain. *See McGann v. Ernst & Young*, 102 F.3d 390, 392 (9th Cir. 1996). Such a motion may be brought "after the pleadings are closed–but early enough not to delay trial." Fed. R. Civ. P. 12(c). "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). Accordingly, while the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id*.

Unless a court converts a Rule 12(b)(6) or 12(c) motion into a motion for summary judgment, a court generally cannot consider material outside of the complaint (*e.g.*, facts presented in briefs, affidavits, or discovery materials). *In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1537 (9th Cir. 1996), *rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

**B. 35 U.S.C. § 101**

Under 35 U.S.C. § 101, patent claims must be directed to one of four patent-

eligible subject matter categories: processes, machines, manufactures, or compositions of matter. *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012). Inventions that fit within one or more of the statutory categories are nonetheless patent-ineligible if they are coextensive with laws of nature, natural phenomenon, or abstract ideas. *Id.* The Supreme Court recently clarified that courts should analyze patent-eligibility using the two-part framework set forth in *Mayo*. *See Alice Corp. Pty, Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). The first step of the *Mayo* test is to determine whether claims are drawn to a patent-ineligible concept, such as an abstract idea. *Alice*, 134 S. Ct. at 2355 (citing *Mayo*, 132 S. Ct. 1289). If the answer is "yes," then the second step of the *Mayo* test is to determine whether the claim elements nonetheless "transform the nature of the claim[s]" into a patent-eligible application. *Id.* Claims directed to abstract ideas are patent-ineligible unless the claims include substantive limitations that would add "significantly more" to the underlying principles. *Id.* "[M]ere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2358. "[I]f a patent's recitation of a computer amounts to a mere instruction to 'implemen[t]' an abstract idea 'on . . . a computer,' . . . that addition cannot impart patent eligibility." *Id.* (quoting *Mayo*, 132 S. Ct. at 1301); *see also Gottschalk v. Benson*, 409 U.S. 63, 65–67 (1972). Whether the asserted claims of the '466 Patent are directed to patent-eligible subject matter under 35 U.S.C. § 101 is a question of law that is appropriate for the Court to decide. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1369 (Fed. Cir. 2011).

## IV. DISCUSSION

### A. The First Step of the *Mayo* Test

In the first step of the *Mayo* test, the Court must identify whether a claim is directed to an abstract idea. To do this the Court must identify what the claimed invention is trying to achieve and ask whether that purpose is abstract. *See Cal. Inst.*

1 *Of Tech. v. Hughes Commc'ns., Inc.,* No. 2:13-cv-07245-MRP(JEM), 2014 WL
2 5661290, at *13 (C.D. Cal. Nov. 3, 2014) (herein, "*Caltech*"). The '466 Patent's
3 asserted claims are directed to the concept of collecting, accessing, and managing
4 personal health records in a secure and private manner. ('466 Patent at Abstract; ECF
5 No. 86 at 2.) Plaintiff acknowledges this concept in its Complaint: "MMR's patents
6 are generally directed to methods for providing a user with the ability to access and
7 collect personal health records associated with the user in a secure and private
8 manner[.]" (Compl. at 3, ECF No. 1.)

9 Having determined the purpose, the next step is determining whether the
10 purpose of the '466 Patent is abstract. For example, age-old ideas are likely abstract
11 like natural laws and fundamental mathematical relationships. *Caltech*, at *13 (citing
12 *Mayo*, 132 S. Ct. at 1296-97). The concept of secure record access and management,
13 in the context of personal health records or not, is an age-old idea. Because a patent
14 on this concept, without more, would threaten to preempt the entire field of secure
15 filing systems, the Court finds the claims of the '466 Patent abstract. *See id*.

16 Other courts have similarly found the concept of record access and management
17 to be an abstract idea. *See Cogent Medicine, Inc. v. Elsevier Inc.*, No. C-13-4479-
18 RMW, 2014 U.S. Dist. LEXIS 139856, at *11 (N.D. Cal. Sept. 30, 2014) (holding that
19 maintaining and searching a library of medical information is an abstract idea); *Wolf v.*
20 *Capstone Photography, Inc.*, No. 2:13-cv-09573, 2014 U.S. Dist. LEXIS 156527, at
21 *2-3 (finding that a process for providing event photographs for inspection, selection,
22 and distribution was an abstract idea). Similarly, allowing for secure and private
23 access to data has also been found to be an abstract concept. *See Card Verification*
24 *Solutions, LLC v. Citigroup, Inc.*, No. 13-C-6339, 2014 U.S. Dist. LEXIS 137577, at
25 *9 (N.D. Ill. Sept. 29, 2014) (finding that claims involving a method of "passing
26 confidential information through a trusted, third-party intermediary to ensure that . . .
27 necessary confidential information remains secure" were directed to a patent-
28 ineligible abstract idea) (denying motion to dismiss without prejudice on other

grounds). Thus, the Asserted Claims of the '466 Patent are directed to a patent-ineligible abstract idea.

### B. The Second Step of the *Mayo* Test

Finding the '466 Patent claim's purpose abstract in step one, the Court must now determine whether there is an inventive concept that appropriately limits the claim such that it does not preempt a significant amount of inventive activity. *Caltech*, at *13. The second step should provide "additional features that provide practical assurance that the process is more than a drafting effort designed to monopolize [the ineligible concept] itself." *Mayo*, 132 S. Ct. at 1297.

Claim 8 does not contain inventive concepts that make it patent-eligible. Claim 8 recites a method for providing a user with the ability to access and collect personal health records in a secure and private manner by: (1) associating access information with the user to access a server storing files; (2) providing a user interface; (3) receiving files at the server from a health care provider; (4) receiving requests through the user interface; (5) sending files; and (6) independently maintaining files on the server. All six of these concepts are routine, conventional functions of a computer and server and therefore broadly and generically claim the use of a computer and Internet to perform the abstract purpose of the asserted claims. *See Alice Corp.*, 134 S.Ct. at 2359; *see also Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 2014 U.S. Dist. LEXIS 152447, *8 (E.D. Va. Oct. 24, 2014) (citing *Alice Corp.*, 134 S.Ct. at 2359) ("[S]toring and querying information in a database . . . is one of the most basic functions of a database system."); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada*, 771 F. Supp. 2d 1054, 1065 (E.D. Mo. 2011) ("Storing, retrieving, and providing data . . . are inconsequential data gathering and insignificant post-solution activity."), *aff'd*, 687 F.3d 1266 (Fed. Cir. 2012). These steps add insignificant activity to limit the abstract idea of the '466 Patent and therefore fail the second step of *Mayo*. *See buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (finding that "transaction service provider computer" and "computer network" added

no inventive concept); *see also Cogent*, 2014 U.S. Dist. LEXIS 139856, at *12-13 (finding that data sets, data folders, and providing information over the Internet based on user requests were "insufficient to confer patent eligibility" because "using a computer to identify and supply new medical literature merely automate[d] what was previously done manually[.]").

The additional limitations found in dependent claims 9-12 are similar to those in claim 8 and do not add "significantly more" to the underlying abstract idea—collecting, accessing, and managing personal health records in a secure and private manner —so as to impart patent eligibility. *See buySAFE*, 765 F.3d at 1355. Accordingly, the asserted claims of the '466 Patent are invalid under 35 U.S.C. § 101 in light of both steps of the *Mayo* inquiry.

Lastly, the Federal Circuit's recent opinion in *DDR Holdings, LLC v. Hotels.com, LP*, No. 2013-1505, 2014 WL 6845152 (Dec. 5, 2014) (herein "*DDR*") is inapposite to this case.[3] The patents-in-suit in *DDR* were directed to systems and methods of generating a composite web page that combines certain visual elements of a "host" website with content of a third-party merchant. In particular, U.S. Patent No. 7,818,399 ("the '399 Patent") addresses the problem of retaining website visitors that would be transported away from a host's website after selecting a hyperlink. *DDR*, at *10. As an example, asserted claim 19 recites a system that "1) stores 'visually perceptible elements' corresponding to numerous host websites in a database, with each of the host websites displaying at least one link associated with a product or service of a third-party merchant, 2) on activation of this link by a website visitor, automatically identifies the host, and 3) instructs an Internet web server of an 'out-source provider' to construct and serve to the visitor a new, hybrid web page that merges content associated with the products of the third-party merchant with the stored 'visually perceptible elements' from the identified host website." *Id*.

---

[3] On December 11, 2014, Plaintiff filed a Notice of Supplemental Authority In Support of Plaintiffs Response to Motion for Judgment on the Pleadings of Invalidity of the '466 Patent citing *DDR*. (ECF No. 101.) Defendants timely responded. (ECF No. 102.)

1  Having found the '399 Patent claims directed to a patent-ineligible idea, the
2  Federal Circuit went on to conclude the claims satisfy step two of the *Mayo* test, and
3  therefore were valid under § 101. *Id.* at *10-12. The Federal Circuit came to this
4  conclusion by distinguishing their recent opinions on patent-ineligible abstract ideas.
5  *Id*. at *10 ("[T]hese claims stand apart because they do not merely recite the
6  performance of some business practice known from the pre-Internet world along with
7  the requirement to perform it on the Internet. Instead, the claimed solution is
8  necessarily rooted in computer technology in order to overcome a problem
9  specifically arising in the realm of computer networks.") Specifically, the Federal
10 Circuit emphasized that the patent's recited result overrides the "routine and
11 conventional sequence of events" because the computer network does not operate in
12 its normal, expected manner of sending the website visitor to the third-party website
13 that is connected with the hyperlinked advertisement. *Id*. Instead, when the website
14 visitor clicks on the hyperlink the claimed system generates and directs the visitor to a
15 hybrid webpage that presents third-party product information with the same visual
16 elements as the host website. *Id*. Further, the Federal Circuit found that the '399
17 Patent did not preempt every application of the idea of increasing sales by making
18 web pages look the same because the claims recite additional specific features that
19 amount to an inventive concept for resolving a particular Internet-centric problem. *Id*.
20 at *12.

21 Unlike the claims in *DDR* the '466 Patent claims are directed to nothing more
22 than the performance of a long-known abstract idea "from the pre-Internet world"—
23 collecting, accessing, and managing health records in a secure and private manner—
24 on the Internet or using a conventional computer. (ECF No. 102 at 1-2.) The '466
25 Patent claims are not "rooted in computer technology in order to overcome a problem
26 specifically arising in the realm of computer networks." *DDR* at *10. Rather, the
27 '466 Patent recites an invention that is merely the routine and conventional use of the
28 Internet and computer with no additional specific features.

## V. CONCLUSION

For the reasons above, the Court finds that the asserted claims of the '466 Patent are patent ineligible, and Defendants' Motion for Judgment on the Pleadings is **GRANTED** without leave to amend. Defendants are directed to submit a proposed judgment by **January 8. 2015**. All hearing dates in the above captioned cases are **VACATED** and all pending motions in the above captioned cases are **MOOT**.

**IT IS SO ORDERED.**

December 23, 2014

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**